UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JAY KOSACK,

                             Plaintiff,

           -against-

ENTERGY ENTERPRISES, INC.,
ENTERGY NUCLEAR OPERATIONS,
INC., ENTERGY SERVICES, INC.,
ENTERGY NUCLEAR NORTHEAST,

                      Defendants.

-------------------------------------------------------------X

Civ. No.:  14-CV-9605 (VLB)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


right
JACKSON LEWIS P.C.

44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060
(914) 946-1216 Facsimile

Jonathan M. Kozak
Benjamin J. Yeamans

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................... 1

SUMMARY JUDGMENT STANDARD OF REVIEW ................................................................. 2

ARGUMENT .................................................................................................................................. 2

POINT I     PLAINTIFF'S CLAIMS REGARDING HIS EMPLOYMENT
            IN THE SECURITY DEPARTMENT SHOULD BE DISMISSED. ......................... 2

    A.  Several Of Plaintiff's Allegations Of Unlawful Conduct In Security Are Untimely. ........ 2

        1.  Alleged retaliatory actions in Security from prior to August 29, 2013
            cannot form the basis of Plaintiff's ERA retaliation claim. ........................................... 3

        2.  Job actions in Security alleged to have been discriminatory on the basis of
            Plaintiff's disability prior to October 1, 2013 and February 25, 2012 also
            cannot form the basis of Plaintiff's ADA and NYSHRL claims. ................................. 3

        3.  The continuing violation theory does not operate to restore
            Plaintiff's untimely claims under the ERA, ADA and NYSHRL. .............................. 5

    B.  Notwithstanding Timeliness, Plaintiff Has No Viable Claim For
        Unlawful Discrimination Or Retaliation During His Employment In Security. ............... 7

        1.  Plaintiff's ERA retaliation claim should be dismissed. ............................................... 7

        2.  Plaintiff's disability discrimination claims should be dismissed. ................................ 9

    C.  Plaintiff's FMLA Retaliation Claim Regarding His Placement
        On A PIP Also Is Untimely And Without Merit. ............................................................. 10

        1.  Plaintiff's FMLA retaliation claim is time-barred. .................................................... 10

        2.  Plaintiff cannot demonstrate a *prima facie* case of FMLA retaliation. ..................... 11

    D.  Plaintiff's Deselection From The Security Department
        As Part Of HCM Does Not Create An Issue For Trial. .................................................... 12

        1.  Plaintiff cannot establish disability discrimination because
            he was no longer qualified for available Security positions. ...................................... 12

        2.  Plaintiff's FMLA retaliation claim also fails. ............................................................ 14

# TABLE OF CONTENTS
## (continued)

Page(s)

3.    Plaintiff ERA retaliation claim based on his deslection from
Security also should be dismissed...........................................................................15

POINT II    PLAINTIFF'S CLAIMS REGARDING HIS EMPLOYMENT
AS A RECEIPT INSPECTOR ALSO SHOULD BE DISMISSED.......................16

A. Entergy Did Not Fail To Accommodate Plaintiff When He Applied For,
And Accepted, The Receipt Inspector Position. ...............................................16

B. Plaintiff's Schedule During The O-ring Outage
Was Not Discriminatory Or Retaliatory. .........................................................18

C. Plaintiff Received A Warning For Violating Safety Protocols Resulting In Injury. ........20

D. Plaintiff Was Not Entitled To Overtime Before June 2015,
Because He Was Paid A Salary Of Approximately $78,000
And His Primary Job Duties Were Exempt Work. ............................................21

POINT III   THE CESSATION OF PLAINTIFF'S EMPLOYMENT
WAS NOT UNLAWFUL DISCRIMINATION OR RETALIATION. ..................22

A. Plaintiff's Disability Discrimination Claim Should Be Summarily Dismissed...............22

1.    Plaintiff cannot satisfy a *prima facie* case of disability discrimination
because he could not perform the essential functions of his job................................22

2.    Entergy had legitimate non-discriminatory reasons to request
that Plaintiff be evaluated by an independent physician...........................................25

3.    Entergy had legitimate non-discriminatory reasons to request
that Plaintiff be evaluated by an independent physician...............................26

4.    Plaintiff's permanent inability to work more than
10 hours per day posed an undue hardship. ..................................................27

5.    Plaintiff is judicially estopped from claiming he can work
more than 10 hours per day.........................................................................27

i.    Plaintiff's application for, and award of, insured long term
disability benefits is inconsistent with his position in this lawsuit. ......................27

## TABLE OF CONTENTS
### (continued)

Page(s)

      ii.  Plaintiff's deposition testimony also cannot be reconciled with his claims in this case. .................................................. 30

    6.  Plaintiff's Failure to Accommodate Claim Also Fails ............................... 31

B.  Plaintiff's FMLA Interference Claim Must Be Dismissed. .............................. 32

C.  Plaintiff's ERA Retaliation Claim Must Be Dismissed. ................................... 33

    1.  Plaintiff's ERA retaliation claim is time-barred. ...................................... 33

    2.  Regardless, Plaintiff cannot point to any evidence supporting that alleged protected activity was a contributing factor. ........................... 35

CONCLUSION ...................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abdu-Brisson v. Delta Air Lines, Inc.,
239 F.3d 456 (2d Cir. 2001)......................................................................... *passim*

AMTRAK v. Morgan,
536 U.S. 101 (2002)...............................................................................4, 5

Belt v. U.S. Dep't. of Labor,
163 Fed. Appx. 382 (6th Cir. 2006).................................................................37

Bogner v. Wackenhut Corp.,
2008 U.S. Dist. LEXIS 1063 (W.D.N.Y. Jan. 7, 2008).........................................25, 27, 28, 29

Canales-Jacobs v. New York State Office of Court Admin.,
640 F. Supp. 2d 482 (S.D.N.Y. 2009)................................................................33

Cleveland v. Policy Mgmt. Sys. Corp.,
526 U.S. 795 (1999)....................................................................................30

Davenport v. City of White Plains,
2015 U.S. Dist. LEXIS 127751 ...........................................................................2

Davidson v. Time, Inc.,
972 F. Supp. 148 (E.D.N.Y. 1997) .....................................................................21

Davis v. Bombardier Transp. Holdings (USA) Inc.,
2013 U.S. Dist. LEXIS 180187 (E.D.N.Y. Dec. 24, 2013) ......................................26

Davis v. City of New York Health & Hosps. Corp.,
2011 U.S. Dist. LEXIS 111518 (S.D.N.Y. Sept. 29, 2011)......................................25

Davis v. Florida Power & Light Co.,
205 F.3d 1301 (11th Cir. 2000) ..........................................................................26

Davis v. Goodwill Indus. Of Greater N.Y. & N.J.,
16 Civ. 7710 (ER), 2017 U.S. Dist. LEXIS 48014 (S.D.N.Y. 2017) ......................18

Di Giovanna v. Beth Israel Med. Ctr.,
651 F. Supp. 2d 193 (S.D.N.Y. 2009)............................................................13, 35

Dister v. Continental Group, Inc.,
859 F.2d 1108 (2d Cir. 1988)..............................................................................2

Flieger v. E. Suffolk BOCES,
      No. 16-2556-cv, 2017 U.S. App. LEXIS 9637 (2d Cir. 2017) ................................................10

Forrester v. Prison Health Servs.,
      No. 15-1098, 2016 U.S. App. LEXIS 10178 (2d Cir. 2016) ....................................................11

Gajda v. Manhattan & Bronx Surface Transit Operating Auth.,
      396 F.3d 187 (2d Cir. 2005)...................................................................................................28

Giallanza v. Time Warner Cable,
      2009 U.S. Dist. LEXIS 27086 (W.D.N.Y. March 30, 2009)....................................................15

Gross v. FBL Financial Services, Inc.,
      557 U.S. 167 (2009).................................................................................................................11

Hoffman v. Williamsville Sch. Dist.,
      443 Fed. App'x 647 (2d Cir. 2011) (ADA) ................................................................................4

Hongyan Lu v. Chase Inv. Servs. Corp.,
      No. 10-208-cv, 2011 U.S. App. LEXIS 4626 (2d Cir. 2011) .....................................................5

Inclan v. N.Y. Hosp. Grp., Inc.,
      95 F.Supp. 3d 490, 503 (S.D.N.Y. 2015) ...............................................................................12

Jaeger v. North Babylon Union Free Sch. Dist.,
      191 F. Supp. 3d 215, 227-228 (E.D.N.Y. 2016)......................................................................22

Jiles v. Wright Med. Tech., Inc.,
      2018 U.S. Dist. LEXIS 40441, (S.D.TX. March 13, 2018)…… ........…….......................26

Johnson v. Del. Cnty. Cmty. Coll.,
      2015 U.S. Dist. LEXIS 164774 (E.D.PA. Dec. 9, 2015).........................................................35

Kahn v. U.S. Sec. of Labor,
      64 F.3d 271 (7th Cir. 1995) ......................................................................................................9

Kinneary v. City of New York,
      601 F.3d 151 (2d Cir. 2010)....................................................................................................10

Leon v. Columbia Univ. Med. Ctr.,
      2013 U.S. Dist. LEXIS 177728 (S.D.N.Y. Dec. 17, 2013) .......................................................2

Lightfoot v. Union Carbide Corp.,
      110 F.3d 898 (2d Cir. 1997)......................................................................................................4

Lioi v. New York City Dep't of Health & Mental Hygiene,
      914 F. Supp. 2d 567 (S.D.N.Y. 2012).....................................................................................22

Loyd v. Phillips Bros., Inc.,
    25 F.3d 518 (7th Cir. 1994) ...........................................................................9

McBride v. BIC Consumer Prods. Mfg. Co.,
    583 F.3d 92 (2nd Cir. 2009)..........................................................................34

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973).................................................................................10, 11

McNelis v. Pa. Power & Light Co.,
    2017 U.S. App. LEXIS 15207 (3d Cir. Aug. 15, 2017)............................35

Mejia v. Roma Cleaning, Inc.,
    2017 U.S. Dist. LEXIS 156409 (E.D.N.Y. Sept. 25, 2017)......................12

Mobley v. Madison Square Garden LP,
    2013 U.S. Dist. LEXIS 46341 (S.D.N.Y. Mar. 15, 2013) ........................10

Nazario v. Promed Pers. Servs.
    NY, 2017 U.S. Dist. LEXIS 94877 (S.D.N.Y. June 19, 2017)..................34

Noll v. IBM,
    787 F.3d 89 (2d Cir. 2015)...........................................................................18

Potenza v. City of New York,
    365 F.3d 165 (2d Cir. 2004).........................................................................13

Powell v. Nat'l Bd. of Med. Exam'rs,
    364 F.3d 79 (2d Cir. 2004)...........................................................................29

Rodal v. Anesthesia Group of Onondaga, P.C.,
    369 F.3d 113 (2d Cir. 2004).........................................................................30

Romano v. Chautauqua Opportunities, Inc.,
    No. 13-2303-cv, 2014 U.S. App. LEXIS 5701 (2d Cir. 2014) ..................16

Shultz v. Congregation Shearith Israel,
    867 F.3d 298 (2d Cir. 2017).........................................................................37

Simmons v. N. Y. City Health & Hosp. Corp.,
    2001 U.S. Dist. LEXIS 4640 (E.D.N.Y. Mar. 30, 2001) ...........................6

Soloviev v. Goldstein,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..........................................................5

Stern v. Trustees of Columbia Univ.,
    131 F.3d 305 (2d Cir. 1997).........................................................................21

Stoetzel v. Wappingers Cent. School Dist.,
    166 A.D.2d 643 (2d Dept. 1990) ............................................................... 5

Tamosaitis v. URS Inc.,
    781 F.3d 468 ........................................................................................... 9

Thompson v. Workmen's Circle Multicare Ctr.,
    2016 U.S. Dist. LEXIS 24121 (S.D.N.Y. Feb. 23, 2016) ......................... 29

Van Zant v. KLM Royal Dutch Airlines,
    80 F.3d 708 (2d Cir. 1996) ..................................................................... 4

Walsh v. N.Y. City Hous. Auth.,
    828 F.3d 70 (2d Cir. 2016) ...................................................................... 11

Waters v. General Bd. of Global Ministries,
    769 F. Supp. 2d 545 (S.D.N.Y. 2011) ...................................................... 13

Yetman v. Capital Dist. Transp. Auth.,
    2015 U.S. Dist. LEXIS 96654 (N.D.N.Y. July 23, 2015) ......................... 12

**Statutes**

42 U.S.C.S. § 12111(10)(A), (B) ..................................................................... 29

29 U.S.C. § 626(d)(1)(B) ................................................................................. 4

29 U.S.C. § 2617(c)(1), (2) ......................................................................... 11, 12

42 U.S.C. § 2000e-5(e)(1) ............................................................................... 4

42 U.S.C. § 5851(b)(1) .................................................................................... 3

**Other Authorities**

29 C.F.R. § 24.104(f)(2) ................................................................................... 9

29 C.F.R. § 825.216(a), (c) .............................................................................. 35

29 C.F.R. § 1630.2(n)(1)(3)(i), (ii), (iv) ..................................................... 21, 24, 25

N.Y. C.P.L.R. § 214(2) ..................................................................................... 5

Fed. R. Civ. P. 56(c) ........................................................................................ 2

Entergy Enterprises Inc., Entergy Nuclear Operations, Inc., Entergy Services Inc., and Entergy Nuclear Northeast (collectively, "Defendants"), through their undersigned attorneys, respectfully submit this Memorandum of Law in support of Defendants' Motion for Summary Judgment.   Defendants seek dismissal of the operative Third Amended Complaint ("the Complaint") filed by Plaintiff Jay Kosack ("Plaintiff") in its entirety, with prejudice to Plaintiff.

## PRELIMINARY STATEMENT

In the Complaint, Plaintiff asserts claims against Defendants under the Americans with Disabilities Act ("ADA"), the Energy Reorganization Act ("ERA"), the Family and Medical Leave Act ("FMLA"), the Fair Labor Standards Act ("FLSA"), and the New York Executive Law ("NYSHRL").[1]   Plaintiff was employed by Entergy Nuclear Operations, Inc. ("Entergy" or the "Company") at the Indian Point Energy Center from approximately 2003 until 2016.

The relevant undisputed material facts are fully set forth in the accompanying Statement Of Undisputed Material Facts In Support Of Defendants' Motion For Summary Judgment ("Defendants' Statement of Facts") pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, to which the Court is respectfully referred.   The facts alleged as set forth in Defendants' Statement of Facts are presumed true solely for the purposes of this motion.

As explained below, the undisputed facts demonstrate that each alleged adverse job action complained of by Plaintiff in the Complaint was motivated by wholly legitimate, nondiscriminatory reasons having nothing to do with any alleged protected activity, unlawful discrimination, or violation of obligations arising under the ADA, NYSHRL and/or the FMLA. In addition, several of Plaintiff's allegations are time-barred and otherwise subject to dismissal as

---

[1]      Plaintiff's Complaint also contains a claim for alleged "spread of hours" pay under applicable provisions of the New York State Department of Labor Minimum Wage Order for Miscellaneous Industries and Occupations. However, Plaintiff confirmed through counsel his intention to withdraw the "spread of hours" claim in his opposition to Defendants' pre-motion letter to the Court dated January 23, 2018.  (Doc. No. 67.)

a matter of law.  Plaintiff's employment ultimately ended because of his inability to safely perform an essential function of his job.  Finally, as to Plaintiff's claim under the FLSA, Plaintiff's primary job duties were exempt and he was, therefore, not entitled to overtime under the FLSA during the limited period of time at issue in connection with that claim.

## SUMMARY JUDGMENT STANDARD OF REVIEW

This Court has previously articulated the standard for evaluating a motion for summary judgment.  Davenport v. City of White Plains, 2015 U.S. Dist. LEXIS 127751, *10 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Although the Court must construe the facts in the light most favorable to the non-moving party, that party "must do more than simply show that there is some meta-physical doubt as to the material facts."  Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).  Rather, the non-moving party must "set forth specific facts," through the use of admissible evidence, showing that there is a genuine issue for trial.  Leon v. Columbia Univ. Med. Ctr., 2013 U.S. Dist. LEXIS 177728, at * 10 (S.D.N.Y. Dec. 17, 2013); see also, Fed. R. Civ. P. 56(c).

## ARGUMENT

## POINT I

### PLAINTIFF'S CLAIMS REGARDING HIS EMPLOYMENT IN THE SECURITY DEPARTMENT SHOULD BE DISMISSED.

As explained below, Plaintiff's claims related to the time period when he was employed in the Security Department should not survive summary judgment.

**A.**    **Several Of Plaintiff's Allegations Of Unlawful Conduct In Security Are Untimely.**

Plaintiff's allegations concerning claimed unlawful discriminatory and retaliatory job actions from 2007, 2009, 2012, and 2013 are untimely under the various causes of action asserted and, thus, cannot support his claims.  Specifically, Plaintiff contends the following

- 2 -

alleged adverse job actions constitute discrimination and/or retaliation under one or more of his claims under the ERA, ADA, NYSHRL and FMLA: (1) denial of so-called "pay equalization" in 2007 and March 2009; (2) direction that Plaintiff should become firearms qualified in or about March 2009 (which was not pursued), after having been relieved of the obligation for his job because of medical reasons; (3) being placed on a performance improvement plan or "PIP" in about June 2012; and (4) alleged duties transfer and exclusion from supervisor meetings in Security in about February 2013.   Each of these alleged job actions occurred outside the applicable limitations periods for Plaintiff's various claims.

1.    **Alleged retaliatory actions in Security from prior to August 29, 2013 cannot form the basis of Plaintiff's ERA retaliation claim.**

The employee protection provisions of the ERA have a 180-day limitations period.  42 U.S.C. § 5851(b)(1).  Therefore, actions Plaintiff claims to be adverse that occurred more than 180 days before February 25, 2014 (*i.e.*, August 29, 2013), when Plaintiff filed his ERA complaint, are untimely.

In addition to being substantively flawed as explained below, Plaintiff's contentions regarding alleged adverse employment actions in 2007, 2009, 2012 and 2013 which he alleges were improperly motivated by retaliation against him in violation of the ERA are time-barred.  Because these alleged job actions occurred well before August 29, 2013, claims premised on these untimely allegations are unquestionably time-barred and must be dismissed.

2.    **Job actions in Security alleged to have been discriminatory on the basis of Plaintiff's disability prior to October 1, 2013 and February 25, 2012 also cannot form the basis of Plaintiff's ADA and NYSHRL claims.**

As a condition precedent to filing a claim of unlawful discrimination under the ADA, a plaintiff must file an administrative charge with the EEOC within 300 days after the occurrence of the alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §

626(d)(1)(B).[2]  As a matter of law, "only incidents that took place within the timely filing period are actionable." AMTRAK v. Morgan, 536 U.S. at 114 (2002); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712-13 (2d Cir. 1996) (holding the deadline to file a charge of discrimination with the EEOC acts as a "statute of limitations" and, as a result, only events that occur within 300 days of when the charge is filed are timely).  Plaintiff dual-filed his administrative complaint with the New York State Division of Human Rights on or about July 28, 2014.  Therefore, Plaintiff's allegations of disability discrimination prior to October 1, 2013 are time-barred under the ADA.

In addition, "[i]t [also] is well established that the institution of civil actions to recover damages for unlawful discriminatory practices under [the NYSHRL] is governed by the three-year Statute of Limitations prescribed in [N.Y.] C.P.L.R. § 214(2)." Stoetzel v. Wappingers Cent. School Dist., 166 A.D.2d 643, 643 (2d Dept. 1990); see also Soloviev v. Goldstein, 104 F. Supp. 3d 232 (E.D.N.Y. 2015) (stating that "the statute of limitations for claims under both the NYSHRL and NYCHRL is three years").  While Plaintiff asserted a claim under the NYSHRL in his original Complaint filed in December 2014, the claim was based on the alleged discriminatory cessation of his employment in Security.  (Doc. No. 1, ¶¶ 30, 32).  In the First Amended Complaint which was filed on February 25, 2015, Plaintiff added reference to the additional alleged discriminatory actions (the alleged failure to obtain pay equalization in 2007 and 2009, and the alleged request to be firearms qualified in 2009).  (Doc. No. 4, ¶¶ 54, 56.)  However, those acts of alleged disability discrimination outside the three-year limitations period (i.e., prior to February 25, 2012) also are time-barred under the NYSHRL.

---

[2]     See AMTRAK v. Morgan, 536 U.S. 101, 108-09 (2002) (Title VII); Hoffman v. Williamsville Sch. Dist., 443 Fed. App'x 647, 649 (2d Cir. 2011) (ADA).

**3.    The continuing violation theory does not operate to restore Plaintiff's untimely claims under the ERA, ADA and NYSHRL.**

The Second Circuit has long cautioned that while the continuing violation theory may apply to "cases involving specific discriminatory policies or mechanisms, . . . multiple incidents of [alleged] discrimination, *even similar ones*, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (emphasis added).  Hongyan Lu v. Chase Inv. Servs. Corp., No. 10-208-cv, 2011 U.S. App. LEXIS 4626 (2d Cir. 2011) (citing Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (holding plaintiff's Title VII continuing violation claim fails because plaintiff alleged discrete discriminatory acts); see also AMTRAK v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").  "Courts of this circuit consistently have looked unfavorably on continuing violation arguments."  Simmons v. N. Y. City Health & Hosp. Corp., 2001 U.S. Dist. LEXIS 4640, *10 (E.D.N.Y. Mar. 30, 2001) (citing Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989) (internal citations omitted).  Plaintiff must show "compelling circumstances" to warrant application of the exception to the statute of limitations. Id.

Here, Plaintiff alleges discreet, unrelated acts of alleged retaliation or disability discrimination (pay equalization, firearms qualification and placement on a PIP).  (See *e.g.,* Pl. Dep. 237:12-238:16, 26:17-20, 195:9-25.)  Unrelated allegations regarding firearms qualification and placement on a PIP cannot restore Plaintiff's pay equalization claims.  Moreover, there is no alleged policy or mechanism which supports even an alleged inference that unlawful discrimination or retaliation for protected activity is accepted or condoned by the Company.

Entergy makes it clear to all personnel that a critical component of all nuclear workers' jobs is the identification and reporting of issues and concerns, no matter how trivial.

(Kozak Aff. Ex. C, Bates No. ENOI 004508 – 004509.)  Reporting more significant concerns, namely those involving safety, security or regulatory importance is more than encouraged at IPEC - it is required.   Entergy, as well as the NRC, emphasize that identifying and communicating such concerns is an essential component of a strong "Nuclear Safety Culture." The NRC promotes and the Company adheres to "Safety Culture Common Language," which provides the "Traits" of a strong nuclear safety culture. (Kozak Aff. Ex. D, Bates No. ENOI 004469 – 004490.)

Entergy's publication "ENTEGRITY, Guidelines for Business Ethics & Compliance" provides clear and unambiguous expectations, guidelines and directions pertaining to when and how to report concerns.  Indeed, the policy identifies multiple mechanisms available to report issues of concern, including but not limited to: the employee's immediate supervisor, Corrective Action Process, Open Door Policy, Employee Concerns Program, Ethics Line or directly to the NRC.   (Kozak Aff. Ex. C.)   The policy further states: "[a]nyone having a reasonable belief of the existence of a known, suspected or potential violation of the law, the Code or any system policy is obligated to report the violation, even if he or she is not involved in the violation in any way." (Id., Bates No. ENOI 004509.)  Entergy also makes clear that taking action against individuals because they have exercised their responsibility to report safety concerns is strictly prohibited. (Id., Bates No. ENOI 004510.)

Likewise, Plaintiff cannot credibly claim Entergy had a policy of disability discrimination.  When Plaintiff became unable to perform his job as an ASO in about 2005, the Company did not terminate his employment.  Instead, a job was formulated in the Security Department's administrative office performing functions consistent with Plaintiff's medical

limitations.  When Plaintiff communicated additional medical restrictions, accommodations were made as well throughout Plaintiff's employment in the Security Department.

There are no compelling circumstances to warrant ignoring the applicable limitations periods under the ERA, the ADA or the NYSHRL respectively.   Accordingly, Plaintiff's so-called pay equalization claim from 2007 and 2009 should be dismissed under all three statutes.  Plaintiff's claim that he was told he would have to become firearms qualified in 2009 (which he never was) also should be dismissed under all three statutes.  Finally, Plaintiff's claims that he was unlawfully placed on a PIP in about June 2012, and that his job duties were altered in February 2013, also should be dismissed under the ERA and ADA.

**B.**     **Notwithstanding Timeliness, Plaintiff Has No Viable Claim For Unlawful Discrimination Or Retaliation During His Employment In Security.**

**1.**     **Plaintiff's ERA retaliation claim should be dismissed.**

To establish a *prima facie* case of retaliation under the ERA, Plaintiff must show: (1) he "engaged in a protected activity"; (2) "the respondent knew or suspected . . . that the employee engaged in the protected activity"; (3) "[t]he employee suffered an adverse action"; and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action."  29 C.F.R. § 24.104(f)(2); Tamosaitis v. URS Inc., 781 F.3d 468, 481; see Kahn v. U.S. Sec. of Labor, 64 F.3d 271, 277 (7th Cir. 1995).  Under the ERA's burden-shifting framework, if a *prima facie* case is made, the burden shifts to the employer to "articulate a legitimate, [nondiscriminatory] reason for the [adverse employment action]."  Kahn at 278.  Once the employer satisfies that burden, the rebuttable presumption is dissolved. Loyd v. Phillips Bros., Inc., 25 F.3d 518, 522 (7th Cir. 1994). The employee then must prove the employer's proffered reason for the job action is a pretext. Kahn at 278.

Even if the Court finds that Plaintiff's allegations regarding pay equalization should be restored under the continuing violation theory, which it should not, Plaintiff cannot establish an inference that his pay was not "equalized" in 2007 *because* of ERA protected activity because Plaintiff testified he believed his pay was not equalized because of his medical condition - not because he reported concerns to government agencies, which he says did not begin until 2009. (Pl. Dep. 219:3-16.)

Moreover, Entergy has articulated legitimate non-discriminatory reasons for not increasing Plaintiff's pay to that of his peers in 2007. Plaintiff contends he should have been given a $5,000 increase in 2007 because his *former* peers (other ASOs assigned to shift duties) received an increase at that time. (Pl. Dep. 213:3-5.) Plaintiff, however, admits that he was not working as an ASO on shift at the time of the increase, because he could no longer perform the ASO job as a result of his inability to qualify with a firearm. (Pl. Dep. 213:6-8.) In light of that undisputed fact, Plaintiff simply had no basis to be paid like a shift ASO since he was not working as a shift ASO. (Pl. Dep. 213:6-215:8.) Plaintiff also makes the unsupportable contention that he should have been paid the same level as Terrence Thivierge, who also was in a different position form Plaintiff. However, Plaintiff acknowledged at his deposition that he understood Mr. Thivierge might have been paid at a higher rate because Mr. Thivierge was more senior having been with the Company for several years more than Plaintiff. (Pl. Dep. 221:5-10.)

It is unclear whether Plaintiff contends additional alleged adverse job actions, prior to his transfer out of Security, constitute ERA retaliation. However, because the undisputed facts demonstrate nondiscriminatory motivations for each additional alleged adverse action, Plaintiff's ERA retaliation claim is not supportable and should be dismissed.

2. **Plaintiff's disability discrimination claims should be dismissed.**

Discrimination claims under the ADA and NYSHRL are analyzed pursuant to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Flieger v. E. Suffolk BOCES, No. 16-2556-cv, 2017 U.S. App. LEXIS 9637, *2 (2d Cir. 2017) (citing Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)) (ADA); see Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (NYSHRL). As an initial step in the McDonnell Douglas analysis, Plaintiff must establish a *prima facie* case by showing: (1) his employer was subject to the statutes; (2) he was disabled within the meaning of the statutes; (3) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. Kinneary v. City of New York, 601 F.3d 151, 155-56 (2d Cir. 2010); Mobley v. Madison Square Garden LP, 2013 U.S. Dist. LEXIS 46341, *10 (S.D.N.Y. Mar. 15, 2013).

If a plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant to "articulate legitimate, nondiscriminatory reasons" for its actions. See McDonnell Douglas Corp., 411 U.S. at 802. Once the defendant articulates its nondiscriminatory reasons, the burden shifts back to the plaintiff to "come forward with evidence that the . . . proffered . . . reason is a mere pretext for actual discrimination." Walsh v. N.Y. City Hous. Auth., 828 F.3d 70, 87 (2d Cir. 2016) (citing Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)).[3]

---

[3] Although the Second Circuit has not yet ruled on whether ADA disability discrimination causes of action should be analyzed under the "mixed motive" or "but for" causation standard, it has suggested that ADA claims could likely be analyzed under a "but for" standard. See Forrester v. Prison Health Servs., No. 15-1098, 2016 U.S. App. LEXIS 10178, *2 (2d Cir. 2016) ("It is questionable whether ADA discrimination claims can proceed on a mixed-motive theory after the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009)."). Under either standard, Plaintiff's medical condition was not a factor, and Plaintiff cannot create a material issue of fact based on his subjective disagreement and conclusory speculation.

Like Plaintiff's ERA claim, Plaintiff cannot demonstrate a *prima facie* case of disability discrimination with respect to his pay equalization claim. Plaintiff cannot sustain that he was paid less than his peers in and after 2007 because of his disability (Pl. Dep. 219:3-16.), when Entergy effectively and unquestionably accommodated Plaintiff's medical conditions by allowing him to remain in Security for approximately eight years after he became unable to perform his job as an ASO in about 2005. Moreover, as discussed above, the undisputable evidence supports the legitimate non-discriminatory explanations for a differential in pay between Plaintiff and other ASO's and between plaintiff and Mr. Thivierge.

## C.   Plaintiff's FMLA Retaliation Claim Regarding His Placement On A PIP Also Is Untimely And Without Merit.

### 1.   Plaintiff's FMLA retaliation claim is time-barred.

The limitations period for non-willful violations of the FMLA is two years prior to the date of the claim. 29 U.S.C. § 2617(c)(1). Plaintiff first raised his FMLA claim in his Amended Complaint on February 25, 2015. (Doc. No. 4.) Accordingly, the limitations period bars any non-willful FMLA claims as of February 25, 2013. Thus, Plaintiff's claim that he was placed on a PIP in 2012 in retaliation for taking FMLA is barred.

Plaintiff asserts that Entergy willfully violated the FMLA – providing Plaintiff with three years to file his FMLA claim. 29 U.S.C. § 2617(c)(2). The Second Circuit has directed that, although the term "willful" is not specifically defined in the FMLA, the Supreme Court's definition of "willful" for purposes of the FLSA applies to claims under the FMLA. Mejia v. Roma Cleaning, Inc., 2017 U.S. Dist. LEXIS 156409, *6 (E.D.N.Y. Sept. 25, 2017) (citing Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531-32 (2d Cir. 2004)). Therefore, an employer acts willfully when he or she "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA]." Id. (quoting McLaughlin v.

Richland Shoe Co., 486 U.S. 128, 133 (1988)).  Even FMLA retaliation claims must meet the requisite threshold to be considered a "willful" FMLA violation.  See Mejia, 2017 U.S. Dist. LEXIS 156409, at *12-14; Yetman v. Capital Dist. Transp. Auth., 2015 U.S. Dist. LEXIS 96654, at *3 (N.D.N.Y. July 23, 2015).  Willfulness is not established by "conduct that is merely negligent or unreasonable." Inclan v. N.Y. Hosp. Grp., Inc., 95 F.Supp. 3d 490, 503 (S.D.N.Y. 2015).  Thus, even if the Company acted incorrectly or unreasonably (which it did not) but not recklessly, the alleged violation may not be considered willful.

### 2.      Plaintiff cannot demonstrate a *prima facie* case of FMLA retaliation.

Even if the Court determines that Entergy's alleged FMLA retaliation could be considered willful, which it should not, Plaintiff falls short of demonstrating a *prima facie* case of FMLA retaliation.  To make out a *prima facie* case of retaliation under the FMLA, plaintiff must adduce evidence that: (1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred in circumstances giving rise to an inference of retaliatory intent.  Di Giovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193, 204 (S.D.N.Y. 2009).  FMLA retaliation claims are also governed by the *McDonnel Douglas* burden-shifting analysis.  Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004).  Merely being placed on a performance improvement plan is not an adverse action.  See Waters v. General Bd. of Global Ministries, 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011) (citing e.g., Weeks v. N.Y. State Div. of Parole, 273 F.3d 76, 86 (2d Cir. 2001)) ("It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.").

Plaintiff cannot satisfy the third and fourth elements of the *prima facie* case, notwithstanding Plaintiff's baseless and unsupported speculation. As a threshold matter, Plaintiff testified that he did not know why he was placed on the 2012 PIP. (Pl. Dep. 194:3-17.) Plaintiff cannot claim that Entergy willfully retaliated against him for using FMLA if he admits he did not to know the reason he was placed on the PIP altogether. Furthermore, Dan Gagnon ("Mr. Gagnon"), IPEC's Security Manager, explained at his deposition that the use of the PIP in 2012 was not punitive or disciplinary. (Gagnon Dep. 70:22.) Rather, the PIP was a tool to provide positive and constructive information to the recipient regarding his/her performance during the referenced period. (Gagnon Dep. 70:22-71:2). The content of the PIP legitimately provided to Plaintiff in 2012, in part addressed Plaintiff's interactions with his peers in other departments. (Gagnon Dep. 69:15-20.) As an example, Mr. Gagnon explained that members of the Finance department reported that Plaintiff was not always receptive to their feedback and challenged them in an inappropriate way. (Gagnon Dep. 69:21-70:8.) Mr. Gagnon also testified that all the other members of the Security Department supervisory team also received a form of a PIP in 2012 which is part of the feedback process. (Gagnon Dep. 71:2-19). Thus, Plaintiff's claim of FMLA retaliation based on the PIP must be dismissed, even if timely.

**D.     Plaintiff's Deselection From The Security Department As Part Of HCM Does Not Create An Issue For Trial.**

**1.     Plaintiff cannot establish disability discrimination because he was no longer qualified for available Security positions.**

Plaintiff cannot establish a *prima facie* case of disability discrimination with respect to the loss of his position in Security because the unarmed position was eliminated and he was unable to perform an essential function of the remaining jobs (which required ability to be armed), with or without reasonable accommodation. Specifically, Plaintiff was not selected to

fill one of the four remaining SOS positions because he was unable to qualify with a firearm –
which was undisputedly an essential function. Each of the other SOS incumbents were selected
and, thus, all retained their SOS positions because they, unlike Plaintiff, were firearms qualified.
(Pl. Dep. 107-108.)   Entergy effectively accommodated Plaintiff's firearms restriction for
approximately 6 years from 2007 through 2013 by creating for Plaintiff a non-shift SOS position
that did not require firearms qualification.   (Wood Dep. 35:9-16.)   During this time, the
Company allowed Plaintiff to remain the only SOS performing primarily administrative tasks,
and he was not required to perform on-shift duties, nor was he required to lead a team of security
officers and alarm station operators as were the other SOSs.

Even prior to HCM, Entergy required all other members of the Security
organization with the exception of the Security Manager, Security Superintendent, Senior
Security Supervisor and Training Supervisor, - including each of the other SOSs - to qualify with
a firearm. (Gagnon Dep. 58:13-22). Incumbent persons in those excepted positions qualified for
and retained their jobs in HCM. As a result, Mr. Gagnon notified Plaintiff during the HCM that
he was not eligible for an available position within Security because he could not qualify with a
firearm. (Pl. Dep. 109:2-7.) The fact that the Company allowed Plaintiff to remain in Security
by effectively creating a position that did not otherwise exist did not require it to continue to do
so indefinitely, particularly in light of the corporate directive to retain only four SOSs.   See
Giallanza v. Time Warner Cable, 2009 U.S. Dist. LEXIS 27086, *29-30. n. 9 (W.D.N.Y. March
30, 2009) (holding employer was not required to provide an indefinite accommodation and
plaintiff does not have vested right to continue in such a position with such accommodations).

Assuming, arguendo, that Plaintiff could establish a prima facie claim for
disability discrimination when he was not selected to remain in his position in Security, his claim

still fails as matter of law because the job action was supported by legitimate non-discriminatory reasons. Namely, that the retained four SOS positions needed to be firearms qualified. (Wood Dep. 13:15-20; Pl. Dep. 107:17-108:18.) In addition, Plaintiff's claim that he should have been considered for the higher level Senior Security Supervisor position, occupied by incumbent employee Terrence Thivierge, also is unavailing because Mr. Thivierge already was performing in the Senior Security Supervisor position prior to HCM. (Gagnon Dep. 46:23-24, 47:1-18.) Entergy was not required to bump Mr. Thivierge out of his position simply because Plaintiff was no longer qualified to remain in one of the SOS positions. See Romano v. Chautauqua Opportunities, Inc., No. 13-2303-cv, 2014 U.S. App. LEXIS 5701, *4 (2d Cir. 2014) (affirming summary judgment holding employer was not required to bump existing employees from their positions to accommodate the Plaintiff).[4]

### 2.   <u>Plaintiff's FMLA retaliation claim also fails</u>.

Plaintiff also claims he was initially not selected for a position during HCM in retaliation for taking FMLA leave. (Compl. ¶ 88.) Plaintiff cannot satisfy the second, third and fourth elements of the *prima facie* case with respect to this claim. Regarding the second element of the *prima facie* case, Plaintiff admitted that he was no longer qualified for the SOS position after HCM, because he was not able to be firearms qualified. (Pl. Dep. 102:16-22.) With respect to the third element of the *prima facie* case, Plaintiff did not experience an adverse employment action during/after HCM because he was hired as a Quality Specialist (later known as Receipt Inspector) – a position for which he applied and accepted. With respect to the fourth element of the *prima facie* case, Plaintiff himself does not seem to believe that he was deselected from

---

[4]      See EEOC Enforcement Guidance: Workers' Compensation and the ADA, Answer to Q23 (2000), available at: https://www.eeoc.gov/policy/docs/workcomp.html. "The ADA does not require an employer to create a new position or to bump another employee from his/her position in order to reassign an employee who can no longer perform the essential functions of his/her original position, with or without a reasonable accommodation."

Security because of his FMLA use in 2005 and 2012 – approximately two years prior to HCM. At his deposition, when asked multiple times whether his past FMLA use was a cause for his deselection, Plaintiff responded: (1) "No, I was told because of my medical condition." (Pl. Dep. 100:22-25, 101:14-17); (2) "No. I was deselected because I couldn't qualify with a firearm, plus all of the retaliation for bringing up significant issues." (Pl. Dep. 102:16-22); (3) "I believe yes, then. Yes combined." (Pl. Dep. 102:25-103:3.)

Even if the Court were to accept Plaintiff's suspect endorsement of his own FMLA retaliation claim, there is no evidence to suggest that his FMLA usage from approximately 2 and 9 years prior to HCM played any role in his deselection. (Pl. Dep. 103:11-104:17.) Accordingly, Plaintiff's FMLA retaliation claim should be dismissed.

### 3.   Plaintiff ERA retaliation claim based on his deselection from Security also should be dismissed.

For all of the same reasons outlined above, Plaintiff's ERA retaliation claim fails with respect to his deselection from Security and also should not proceed to trial. Plaintiff testified at his deposition that he was asked to be firearms qualified after he reported what he thought was an issue about high capacity magazines in 2009. (Compl. ¶ 53; Pl. Dep. 26:17-23.) Contrary to Plaintiff's claim, however, the undisputable fact is that Plaintiff was not required to become firearms qualified in 2009, or at any point prior to HCM. Plaintiff had retained his position in Security without having been firearms qualified since 2005. With respect to Plaintiff's deselection from Security during HCM, Plaintiff was asked at his deposition whether he had any evidence that he was not selected for a position in Security because of his making complaints to the NRC. Plaintiff responded: "Not tangible." (Pl. Dep. 117:15-19.)

The non-discriminatory reasons explained in detail above also compel summary judgment with respect to Plaintiff's ERA retaliation claim. Plaintiff's conclusory references to a

so-called retaliatory "culture" is insufficient to negate the Company's non-discriminatory explanation and to support an inference of unlawful ERA retaliation. (Pl. Dep. 116:8-12.)[5]

**POINT II**

**PLAINTIFF'S CLAIMS REGARDING HIS EMPLOYMENT AS A RECEIPT INSPECTOR ALSO SHOULD BE DISMISSED.**

Plaintiff's claims related to his employment as a Receipt Inspector in the Supply Chain also should not survive summary judgment.

**A.      Entergy Did Not Fail To Accommodate Plaintiff When He Applied For, And Accepted, The Receipt Inspector Position.**

To establish a *prima facie* claim of failure to accommodate under the ADA (or other statute), a plaintiff must establish that (1) he/she has a disability within the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Davis v. Goodwill Indus. Of Greater N.Y. & N.J., 16 Civ. 7710 (ER), 2017 U.S. Dist. LEXIS 48014, *17 (S.D.N.Y. 2017).

Employers are not required to provide a perfect accommodation or even the very accommodation most preferred by the employee. Noll v. IBM, 787 F.3d 89, 95 (2d Cir. 2015). Rather, the employer has the ultimate discretion to choose between potentially effective accommodations. Id. The employer may choose the accommodation that is easier for it to provide. Id. (citing 29 C.F.R. § 1630 app.) All that is required is that the accommodation be effective in enabling the employee to perform the essential functions of the job. Id.

After Plaintiff was deselected during HCM, Entergy allowed Plaintiff additional time to pursue and obtain another position at the facility by extending his separation deadline to

---

[5]      The NRC also found Plaintiff's contentions of ERA retaliation pertaining to Plaintiff's deselection during HCM to be unsubstantiated. (Kozak Aff. Ex. FF, Bates No. KOSACK 01295 - 01296.)

January 31, 2014. (Kozak Aff. Ex. EE, Bates No. ENOI 00163.)   During the several months leading up to January 2014, Plaintiff applied for nine positions, and interviewed for three or four positions.  (Kozak Aff. Ex. GG; Pl. Dep. 153:7-16.)  Plaintiff interviewed for the following jobs: (1) Procurement Specialist III;[6] (2) Receipt Inspector; and (3) Supervisor, Materials (Warehouse Supervisor).  (Id.)  Plaintiff was also scheduled to interview for a fourth, Financial Analyst position, but he declined the interview because he was satisfied to have been offered the Receipt Inspector position.  (Pl. Dep. 133:9-134:6.)

While Plaintiff self-servingly testified that he feels he was more qualified than virtually every other employee in every IPEC position, including his supervisors (Pl. Dep. 135:16-136:4; 137:18-137:22; 143:5-25; 144:2-25), there is simply no support for Plaintiff's conclusory contention that his subjective view of himself evinces disability discrimination or denial of a reasonable accommodation.   The undisputed evidence demonstrates that the Company: (1) extended Plaintiff's separation date after HCM so that he could apply for and consider additional jobs as opposed to being laid off sooner; (2) granted Plaintiff interviews for nearly 50% of the jobs he applied for; and (3) ultimately offered Plaintiff the Receipt Inspector position, which he accepted.

Moreover, Plaintiff testified not only that he was happy to receive the Receipt Inspector job but, more significantly, that he felt he could perform the Receipt Inspector job with reasonable accommodations. (Pl. Dep. 129:4-15.)  In addition, Plaintiff testified that Entergy provided to him the accommodations he requested shortly after he started as a Receipt Inspector. These accommodations included a 15 pound lifting restriction, vehicle support and the ability to

---

[6]      Please note that Plaintiff testified at his deposition that he was interviewed for the Purchasing position and Quality Specialist position at the same time. (Pl. Dep. 149:3-7.)  Whereas, Mr. Schaefer testified at his deposition that Plaintiff was jointly interviewed for the procurement position and quality specialist position. (Schaefer Dep. 32: 4-6.)  It appears that the Purchasing position was another name for the Procurement position.

avoid working on ladders and narrow platforms. (Pl. Dep. 68:23-69:18.)   Unquestionably, the Company satisfied any obligations it may have had under the ADA and NYSHRL to provide Plaintiff reasonable, effective accommodations when it offered him the Receipt Inspector position and continued to provide Plaintiff with the support and job alterations necessary to accommodate him during his tenure as a Receipt Inspector.

**B.**     **Plaintiff's Schedule During The O-ring Outage Was Not Discriminatory Or Retaliatory.**

During an O-ring outage in September 2015, Plaintiff's supervisor, John Schaefer ("Mr. Schaefer"), required 24-hour coverage between Plaintiff and his co-Receipt Inspector, Joseph D'Annibale ("Mr. D'Annibale").   To accomplish 24-hour coverage, Plaintiff and Mr. D'Annibale would each need to work alternating 12-hour shifts.   Plaintiff claims he was required to work the 12-hour schedule in retaliation for contacting the NRC about an alleged improper use of a temporary clamp to patch a cooling unit leak in August 2015.   (Compl. ¶¶ 173-175.)   At his deposition however, Plaintiff acknowledged that he does not have evidence to support any connection between his schedule in September during the outage and the concern raised about the clamp.   Plaintiff testified as follows:

> Q: I am asking you what evidence or proof you have that whatever this issue was with your hours was a result of you complaining to the NRC back in August? What evidence do you have to tie it to that? That's all I want to know.
>
> A: It's the culture.
>
> Q: So nobody said anything to you, correct?
>
> A: About?
>
> Q: Nobody said, Mr. Kosack or Jay, I am doing this because you went to the NRC, correct?
>
> A: It's the culture.
>
> Q: Did anybody ever say that to you, yes or no?

A: The answer is no.

(Pl. Dep. 88:14-89:5.)

There are no facts that connect Plaintiff's alleged protected activity (speaking with the NRC about issues relating to the clamp) and the decision to schedule 24-hour Receipt Inspector coverage during the outage. Likewise, Mr. Schaefer had legitimate business reasons for requiring Plaintiff and Mr. D'Annibale to work 12-hour shifts. Mr. Schaefer, required the 24-hour coverage to ensure that any emergent inbound material would be timely received, and to enable Plaintiff and Mr. D'Annibale to work on a backlog of materials that needed to be inspected. (Kozak Aff. Ex. XX, Bates No. ENOI 002970.) During a portion of the outage, Mr. D'Annibale had preapproved time off scheduled for his wedding. When Mr. D'Annibale returned, both he and Plaintiff worked 12-hour shifts. (Pl. Dep. 533:21-534:2.) Had Mr. D'Annibale not been away, he would have worked inverse 12-hour shifts during the same period as Plaintiff. (Pl. Dep. 534:4-13.)

Plaintiff contends the 24-hour Receipt Inspector coverage was not necessary, because it was unlikely that an emergent need would arise and, if it did, he said he could have returned to the facility to perform his job on an on-call basis. (Kozak Aff. Ex. ZZ.) Plaintiff's speculative contention that there was an alternative to the employment decision is immaterial to the Court's analysis of his claim that unlawful retaliation motivated the job action. It is not appropriate for any fact-finder to second-guess the Company's business decision in this context. It is well-accepted that courts should not generally challenge an employer's business judgment. See Davidson v. Time, Inc., 972 F. Supp. 148, 153 (E.D.N.Y. 1997); see Stern v. Trustees of Columbia Univ., 131 F.3d 305, 316 (2d Cir. 1997) ("It is simply inappropriate for a court to act

as a super-personnel department that reexamines an entity's business decisions.");[7] 29 C.F.R. § 1630.2(n)(3)(i) ("Evidence of whether a particular function is essential includes, but is not limited to: [t]he employer's judgment as to which functions are essential.").

## C.   <u>Plaintiff Received A Warning For Violating Safety Protocols Resulting In Injury</u>.

In December 2015, Plaintiff received a written warning for his second failure to utilize proper human performance tools when Plaintiff injured himself attempting to open a crate using a cordless drill.  (Kozak Aff. Ex. DDD.)  Like his other ERA retaliation and disability discrimination claims, Plaintiff points to no evidence supporting that the job action was improperly motivated.  Plaintiff acknowledged at his deposition that he is not aware of any facts linking the December 2015 Fact Finding concerning his failure to follow safety protocols to prior NRC Complaints.  (Pl. Dep. 634:12-635:7.)

Furthermore, it is well-settled that corrective action for violation of a company policy is a legitimate non-discriminatory explanation for job action. <u>See</u> <u>Lioi v. New York City Dep't of Health & Mental Hygiene</u>, 914 F. Supp. 2d 567, 587 (S.D.N.Y. 2012) (<u>citing</u> <u>Shumway v. United Parcel Service, Inc.</u>, 118 F.3d 60, 65 (2d Cir. 1997)) (violation of company policy is a legitimate non-discriminatory justification).[8]  There are no material issues of fact supporting Plaintiff's claim that he was unlawfully disciplined as retaliation under the ERA or as unlawful disability discrimination under the ADA or NYSHRL.

---

[7]      The NRC also concluded that Plaintiff was not subject to an adverse action when he was scheduled to work the 12-hour night shift during the O-ring outage. (Kozak Aff. Ex. AAA, Bates No. KOSACK 00605 – 00607.)

[8]      Plaintiff's remaining ERA retaliation claims are also without merit.  Contrary to Plaintiff's claim that he was subject to a retaliatory drug test after complaining he was fatigued from the O-ring outage (Compl. 181; Kozak Aff. Ex. at AAA, Bates No. KOSACK 000605 - 00606.), the NRC performed an on-site inspection and concluded that he was subjected legitimately to a random drug test.  (Pl. Dep. 600; Kozak Aff. Ex. at KOSACK 00605 - 00606.).  Likewise, Plaintiff acknowledged that he also is not aware of any facts linking his January 2016 Fact Finding for a deficient piping inspection to prior NRC Complaints. (Pl. Dep. 634:12-635:7.)  Moreover, merely being subject to an investigatory fact finding is not an adverse employment action as a matter of law. <u>Jaeger v. North Babylon Union Free Sch. Dist.</u>, 191 F. Supp. 3d 215, 227-228 (E.D.N.Y. 2016) (holding fact investigations alone are not adverse employment actions).

**D.**   **Plaintiff Was Not Entitled To Overtime Before June 2015, Because He Was Paid A Salary Of Approximately $78,000 And His Primary Job Duties Were Exempt Work.**

Plaintiff's claim that the Receipt Inspector position was entitled to overtime prior to June 2015 is also meritless. An employee is exempt from receiving overtime under the FLSA if he meets the requirements of the executive, administrative, or professional exemptions. During the relevant time period, from the beginning of his employment as a Receipt Inspector in February 2014 until the Company's decision to reclassify the position to non-exempt retroactive to January 1, 2015, Plaintiff was indeed exempt under the administrative exemption, because (1) he was paid on a salary basis in excess of $455 per week;[9] (2) he had as his primary job duty the performance of non-manual work directly related to the general business operations of the Company, and (3) his primary job duty included the exercise of discretion and independent judgment with respect to matters of significance.

As a Receipt Inspector, Plaintiff's job duties included, but were not limited to, performing inspections, examinations and testing associated with the receipt and dedication of purchased material; reviewing and reporting examination testing procedures and results; providing oversight and technical support; and qualifying new and existing receipt inspectors. (Kozak Aff. Ex. II.) In addition to the supervisory and technical support responsibilities, Plaintiff's Receipt Inspector position required between 8-12 years of experience in nuclear power design, construction, maintenance or operations, among other related disciplines. (Id.) Furthermore, Mr. Schaefer and Mr. Woodruff, relied upon Plaintiff's experience and judgment to solve problems for the Department. (Kozak Aff. Ex. LL, Bates No. ENOI 000947.) For example, in August 2015, a leak occurred in one of the surface water piping units of a fan cooler in the vapor containment unit. (Compl. ¶ 157; Pl. Dep. 489:15-22; Schaefer Dep. 244:18-20.) In

---

[9]      As of April 1, 2013, Plaintiff earned $76,909 annually. On April 1, 2014, he earned $78,425 annually. (Kozak Aff. Ex. MM, Bates No. ENOI 000476.)

lieu of a Receipt Inspector entering the unit to inspect the patch, Plaintiff suggested that someone might be able to take pictures of the clamp to determine whether the clamp's specifications met the requirements to be considered a safety-designated part capable of stopping the leak – an idea which Mr. Schaefer appreciated.  (Schaefer Dep. 245:18-246:4.)  As a result, it is clear that the Receipt Inspector position was exempt under the FLSA's administrative exemption.[10]

### POINT III

### THE CESSATION OF PLAINTIFF'S EMPLOYMENT WAS NOT UNLAWFUL DISCRIMINATION OR RETALIATION.

**A.    Plaintiff's Disability Discrimination Claim Should Be Summarily Dismissed.**

**1.    Plaintiff cannot satisfy a *prima facie* case of disability discrimination because he could not perform the essential functions of his job.**

The ADA defines "essential functions" in relevant part as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).  Evidence that a job function is "essential" includes, but is not limited to, the employer's judgment as to which functions are essential, the written job descriptions of the position, and the consequences of not requiring the incumbent to perform the function. 29 C.F.R. § 1630.2(n)(3)(i), (ii) and (iv).  When determining whether a plaintiff can perform the essential functions of his or her job, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." Bogner v. Wackenhut Corp., 2008 U.S. Dist. LEXIS 1063, *14-15 (W.D.N.Y. Jan. 7, 2008) (citing Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)).[11]  The NYSHRL requires the same inquiry regarding essential functions as the ADA. Davis v. City of New York Health & Hosps.

---

[10]    Plaintiff acknowledged he was paid the proper amount of retroactive overtime since January 2015.  Thus, even if the Court determines there is an issue whether Plaintiff should have non-exempt from the beginning of his tenure as a Receipt Inspector, which it should not, any overtime allegedly owed to Plaintiff is limited to the time period between February 2014 and December 2014. (Kozak Aff. Ex. UU.)
[11]    Copies of all unreported cases are attached to the Kozak Aff. as Exhibit "KKKK".

Corp., 2011 U.S. Dist. LEXIS 111518, *16 (S.D.N.Y. Sept. 29, 2011) (citing Burton v. Metro.

Transp. Auth.., 244 F. Supp. 2d 252, 258 (S.D.N.Y. 2003)).

   Here, the Company determined that the ability to work more than 10 hours at a

time is an essential job function of Plaintiff's Receipt Inspector position, as well as for other jobs

at IPEC. (Skrmetta Dep. 23; Kozak Aff. Ex. TTT.)  More specifically, the ability to work at least

12 hour shifts is required at all times.  (Schaefer Dep. 219:1-6; Kozak Aff. Ex. WWW, ¶¶ 8, 12.)

Entergy's policy titled "Personnel Expectations Related to Emergency Response at Entergy

Nuclear Sites" refers to three components of each nuclear facility job: (1) safe and efficient plant

operations and support; (2) emergency response; and (3) outage support. (Kozak Aff. Ex. XXX,

Bates No. ENOI 002836.)  The policy further states in relevant part:

> Personnel at the nuclear sites and the corporate office are
> KEY to the success of the emergency response organization
> (ERO) and are vital to protecting the lives and property of
> employees and the general public.  The term "vital" implies
> that every role in the ERO is an essential element for a
> well-organized response in the event of an emergency at
> any nuclear site....

(Id.)

   Furthermore, Plaintiff's Receipt Inspector job description clearly states,

> As a provider of essential services, Entergy expects its
> employees to be available to work additional hours, to work
> in alternate locations, and/or to perform additional duties in
> connection with storms, outages, emergencies, or other
> situations as deemed necessary by the company.

(Kozak Aff. Ex. II.)  Courts have long held that the ability to work overtime during emergency

situations may constitute an essential job function.  See Davis v. Florida Power & Light Co., 205

F.3d 1301 (11th Cir. 2000) (affirming summary judgment in favor of power company that

working overtime is an essential function for employee's job which required emergency

response); see Davis v. Bombardier Transp. Holdings (USA) Inc., 2013 U.S. Dist. LEXIS

- 23 -

180187, *37 (E.D.N.Y. Dec. 24, 2013) (holding working overtime during emergency conditions was an essential job requirement).    Plaintiff confirmed that he often was required to work extended shifts when necessary during outages, thus it is unquestionable that doing so was a regular and recurrent part of his job given that outages at a nuclear plant indeed do occur (on both a scheduled and unplanned basis).  (Kozak Aff. Ex. WWW, ¶¶ 8, 9, 12.)  In fact, Plaintiff was unable to maintain 12-hour shifts during an outage in September 2015, requesting to leave his shift early due to pain and fatigue.  (Kozak Aff. Ex. YY.)

As such, the medical limitation that Plaintiff should not work more than 10 hours per day prevented him from being able to participate in the necessary emergency response and outage support that is required of all nuclear workers.  While Plaintiff may argue that he would have the ability to perform overtime by working additional days, this simply would not enable him to perform the essential function of his job - to work more than 10 hours per day when the need arises.  As a nuclear facility tasked with the safe operation, generation and distribution of energy, the Company simply could not allow Plaintiff (or anyone else) to be excused on a permanent basis from performing this essential job function.  While contingencies have been made for Plaintiff (and others) on a temporary basis, the permanent inability to be relieved from the requirement to be able to work up to 12 hours shifts when necessary is neither reasonable nor otherwise required by the ADA.

This case is analogous to Bogner v. Wackenhut Corp., 2008 U.S. Dist. LEXIS 1063 (W.D.N.Y. Jan. 7, 2008).  In Bogner, the plaintiff worked as an Armed Security Officer for a security services company tasked with protecting the Ginna Nuclear Power Plant on Lake Ontario, New York. Id. n.1.  Due to the plaintiff's epilepsy, a doctor recommended that the plaintiff work only the day shift. Id. at *5.  The employer maintained that being available for

overtime as well as availability to work different shifts as needed was an essential function of the job. Id. The employer explained that it is crucial that "you be able to work when you are called. No matter what time of day or night, due to staffing requirements....Anybody could be called at any time and everybody is required to be able to respond to an emergency or to fill required staffing" Id. Accordingly, the employer terminated the plaintiff's employment due to his permanent inability to work at certain times. Id. at *14. In granting summary judgment in favor of the employer, the district court held the plaintiff was not a qualified individual with a disability within the meaning of the ADA. The court explained, in part, that if "plaintiff is not able to fulfill the other essential functions of his former position, such as, emergency preparedness and competent security at any hour...then as practical matter, retaining him as an employee could represent a substantial hardship to [his employer]."

Like the plaintiff in Bogner, Plaintiff is simply unable to support two of the three essential components of his job on a permanent basis - extra shift hours during outages and/or emergent situations. Accordingly, Plaintiff cannot demonstrate a *prima facie* case of disability discrimination with respect to his separation because of the 10-hour work limitation.

  **2.**  **Entergy had legitimate non-discriminatory reasons to request that Plaintiff be evaluated by an independent physician.**

Entergy's decision to send Plaintiff for an IME was unquestionably based on (1) Plaintiff's doctor's written statement in January 2016 that Plaintiff's existing medical condition of vertigo "will cause unsafe working conditions" and that a "shorter workweek will not aggravate Plaintiff's chronic inner ear disorder as much" (Skrmetta Dep. 118; Kozak Aff. Ex. KKK, Bates No. KOSACK.SecondAmended 000354.), and (2) Plaintiff's December 21, 2015 deposition testimony that he is always in pain and that he could simply get out of his chair and twist wrong and be in a lot of pain. (Pl. Dep. 97:3-15.) This followed Plaintiff's statement that

he required an unscheduled medical leave of absence because he was at risk of a "stroke or heart attack." (Kozak Aff. Ex. III.) Plaintiff was sent for an IME to determine whether he was capable of performing the essential functions of his job with or without accommodation upon his return from leave. Plaintiff's attempt to distort Entergy's decision to send him for an IME as a form of discrimination or retaliation is pure speculation and unsupported by the record evidence. See Gajda v. Manhattan & Bronx Surface Transit Operating Auth., 396 F.3d 187, 188 (2d Cir. 2005) (citing Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 98 (2d Cir. 2003)) ("[C]ourts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties.").

**3.    Shifting Plaintiff's essential job functions is unreasonable.**

It is well-established that shifting an employee's essential job functions to other employees is not a reasonable accommodation under the ADA. Thompson v. Workmen's Circle Multicare Ctr., 2016 U.S. Dist. LEXIS 24121, *40-42 (S.D.N.Y. Feb. 23, 2016). Permanently excusing Plaintiff from mandatory overtime when necessary is unreasonable and would cause an undue hardship to be borne by Plaintiff's co-workers as they would be required to work extended hours and to take on added responsibilities to cover for Plaintiff. (Schaefer Dep. 224:21-225:6.) See Jiles v. Wright Med. Tech., Inc., 2018 U.S. Dist. LEXIS 40441, *35 (S.D.TX. Mar. 13, 2018) (granting summary judgment on the plaintiff's ADA claim, in part, because the ADA does not require employers to assign the essential function of working overtime to other employees.)

This would have been particularly burdensome because Plaintiff was one of only two Receipt Inspectors employed at the IPEC facility.[12]

4.    **Plaintiff's permanent inability to work more than 10 hours per day posed an undue hardship.**

A defendant is not required to offer an accommodation that poses an undue hardship on its operations.  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 88 (2d Cir. 2004). The ADA defines undue hardship as an action requiring significant difficulty or expense. 42 U.S.C.S. § 12111(10)(A).  One of the factors to be considered in evaluating undue hardship is the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce.  42 U.S.C.S. § 12111(10)(B).  At a nuclear facility, Plaintiff's indefinite inability to work more than 10 hours per day during outages or when an emergency response is required, posed an undue hardship on the Company - potentially impacting the safe operation of the facility. See Bogner at *17.  Because Plaintiff would not be able to work if an emergency occurred, beyond his 10 hour shift, he is not a qualified individual under the ADA.

5.    **Plaintiff is judicially estopped from claiming he can work more than 10 hours per day.**

    i.    **Plaintiff's application for, and award of, insured long term disability benefits is inconsistent with his position in this lawsuit.**

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). The Supreme Court in Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), further explained as follows:

---

[12]    The NRC also relied on this fact when it determined that Plaintiff was not subject to an adverse action when he was scheduled to work the 12-hour night shift during the September 2015 O-ring outage. (Kozak Aff. Ex. AAA, Bates No. KOSACK 00607.)

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id. at 807.

Here, Plaintiff submitted an application for Long Term Disability ("LTD") benefits to Entergy's insurance carrier, UNUM, on April 4, 2016. (Kozak Aff. Ex. BBBB.) Under the LTD plan, applying for and being awarded LTD benefits presupposes full disability and an inability to work.[13] In support of his LTD claim, Plaintiff provided UNUM the medical opinion of Dr. Kwa, who concluded following his IME of Plaintiff, that Plaintiff could not perform an essential function of his job – namely, safely working more than 10 hours per day.

Plaintiff supplemented his LTD application on September 14, 2016. Included with Plaintiff's supplement was "an extensive supporting medical report from Plaintiff's infectious Disease Specialist Doctor Irene Grant," as well as information from his Primary Care Physician Dr. Robinson. (Kozak Aff. Ex. CCCC.) Dr. Grant's documentation of Plaintiff's physical condition is particularly comprehensive. In her "Disability Report" dated July 29, 2016, Dr. Grant describes Plaintiff as suffering from "severe chronic pain," "persistent continuous unexplained pain," "permanent vestibular damage," and she states (among other things) that Plaintiff has "difficulty walking and moving," that "together, … interfere with tasks of daily

---

[13] Entergy Long Term Disability Summary Plan Description, January 1, 2012 (excerpt):
You are Disabled if UNUM determines that: You are limited from performing the Material and Substantial Duties of your job due to Sickness or Injury for 180 continuous days of any one period of disability (the Elimination Period); and You have a 20% or more loss in your Indexed Monthly Earnings due to the same Sickness or Injury.

living, limiting his ability to work physically." Dr. Grant concluded that "[i]n my experience, many mold-exposed patients with immunosuppression [Plaintiff's medical condition] deteriorate …[t]hus, his overall prognosis is guarded." (Id, Bates No. ENOI 003836 – 003840.)

Two days following Plaintiff's submission of supplemental information from Dr. Grant and Dr. Robinson, a UNUM claims professional conducted a telephone interview with Plaintiff. The notes of the claims professional describing how Mr. Kosack verbalized his own physical condition to support his claim for LTD benefits, included:

> He walks with a limp and is in constant pain. … He also takes meclizine for his dizziness but that makes him sleepy so he doesn't take it often. I questioned frequency of dizziness and he is dizzy all the time to some degree if it's very hot, it's much worse … He's had vestibular therapy and nothing has worked … His doctors believe he does not have physical ability to do the job at all, but he has always worked with a lot of pain and he would continue to do so just to get back to it.

(Kozak Aff. Ex.  , Bates No. ENOI 000476 - 00477.) UNUM reviewed all of the information received from Plaintiff and his medical practitioners, and <u>concluded that Plaintiff was permanently disabled as of January 11, 2016</u>. Because UNUM accepted that Plaintiff was unable to perform his job, he was awarded LTD benefits beginning July 9, 2016. (Kozak Aff. Ex. EEEE.)[14]

By filing a claim for LTD benefits, Plaintiff effectively <u>acknowledged and admitted</u> (under criminal penalties for providing materially false information)[15] that he was unable to safely perform his job at Entergy. Indeed, not only did Plaintiff submit medical

---

[14]   Pursuant to the UNUM LTD plan, to be eligible for benefits an employee must be continuously disabled by the same condition for the 180-day elimination period (i.e. January 11, 2016 – July 9, 2016).

[15]   The UNUM LTD Disability Claim Form contains the following "Fraud Warning":

> "Any person who knowingly and with the intent to defraud any Insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, Information concerning any fact material thereto, commits a fraudulent Insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

information from his own physicians to support his LTD insurance claim, but he also provided the medical opinion of Dr. Kwa – upon whose medical opinion the Company relied. Plaintiff cannot submit Dr. Kwa's opinion that Plaintiff cannot work more than 10 hours per day in support of his claim for LTD benefits, and simultaneously argue the Court should disregard Dr. Kwa's 10 hour limitation because it suits his ADA claim.

The Company is not arguing here that Plaintiff is completely barred from bringing any claim under the ADA because he was determined to be "disabled" for purposes of LTD benefits. However, Plaintiff should be judicially estopped from taking certain positions before this Court that are both inconsistent and irreconcilable with Plaintiff's statements to UNUM in support of his application for LTD benefits. Plaintiff should not be permitted to advance in this lawsuit arguments to support a claim for alleged unlawful termination from employment which are contrary to the information and representations that Plaintiff and his doctors presented in support of Plaintiff's award of remuneration from UNUM in the form of LTD benefits.

As such, because Plaintiff represented to UNUM that he was unable to perform the essential functions of his job (including submission of medical reports from Doctors' Grant, Robinson and Kwa describing his many ailments and limitations), he should now be precluded from claiming he can perform the essential functions of his position simply because it would suit his ADA claim. Undisputedly, Plaintiff was not a qualified individual with a disability within the meaning of the ADA. Plaintiff's alleged unlawful termination claim and his failure to accommodate claim should be dismissed as a matter of law.

ii.      **Plaintiff's deposition testimony also cannot be reconciled with his claims in this case.**

In addition to Plaintiff's submissions to UNUM, Plaintiff likewise testified regarding his medical condition in a manner wholly inconsistent with his argument in support of

his claim in this case that he was able to perform the essential functions of his job with or without a reasonable accommodation. Specifically, Plaintiff testified as follows:

> A: Because I got pain, in my situation, for moving the wrong way. I got muscle spasms, my wrist hurting. I have pain every day, it's just a matter of what pain. I have sciatica pain going down my leg. I could get up out of this chair and twist wrong and I could be in a lot of pain, but I try to live a normal life.
>
> Q: Are you saying that, based on your current medical condition, something like this could happen at any time?
>
> A: Absolutely. I have never hidden that from anybody.

(Pl. Dep. 97:3-15.)

Plaintiff cannot now discount his deposition testimony in which he openly acknowledged that it is questionable whether he can perform his job. See Canales-Jacobs v. New York State Office of Court Admin., 640 F. Supp. 2d 482, 488 (S.D.N.Y. 2009) (holding Plaintiff's ADA and NYSHRL claims fail as a matter of law by attempting to create a genuine issue of material fact which contradicted prior sworn testimony.) Accordingly, Plaintiff fails to demonstrate a *prima facie* case of disability discrimination.

**6.      Plaintiff's Failure to Accommodate Claim Also Fails.**

For the same reasons set forth in Point III.A. above, and for the additional reason that there simply was no other reasonable accommodation that would enable Plaintiff to perform the essential functions of his job, Entergy is entitled to summary judgment to the extent Plaintiff contends the decision to terminate his employment constitutes failure to provide a reasonable accommodation. No accommodation exists which would enable Plaintiff to work more than 10 hours per day. Entergy did not have an obligation to consider as a reasonable accommodation the elimination of an essential job function.

Notwithstanding that Entergy engaged in the interactive process with Plaintiff at

multiple times during his employment, it is well-settled that a failure to engage in the interactive process does not warrant liability under the ADA if no reasonable accommodation is available. See e.g., McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 100 (2nd Cir. 2009); Nazario v. Promed Pers. Servs. NY, 2017 U.S. Dist. LEXIS 94877, *12 (S.D.N.Y. June 19, 2017).  As such, Plaintiff's failure to accommodate claim concerning his separation should be dismissed.

**B.    Plaintiff's FMLA Interference Claim Must Be Dismissed.**

A *prima facie* claim of FMLA interference requires a plaintiff to establish by a preponderance of the evidence that: "(1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA." Di Giovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193, 199 (S.D.N.Y. 2009).

Pursuant to the FMLA Regulations, "an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 825.216(a). Moreover, "*if the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition ... the employee has no right to restoration to another position under the FMLA. The employer's obligations, may, however, be governed by the [ADA]....*" 29 C.F.R. § 825.216(c) (emphasis added).

As such, courts have regularly upheld decisions to deny reinstatement under the FMLA when it has been established that the employee is unable to return to work and perform

the essential functions of his/her position. See e.g., Johnson v. Del. Cnty. Cmty. Coll., 2015 U.S. Dist. LEXIS 164774, *25 (E.D.PA. Dec. 9, 2015) (holding plaintiff's inability to walk or run which were essential functions of his position was fatal to his FMLA interference claim). In fact, the Third Circuit recently has applied this principle in a somewhat analogous situation involving a nuclear employer.  In McNelis v. Pa. Power & Light Co., 2017 U.S. App. LEXIS 15207 (3d Cir. Aug. 15, 2017), the plaintiff was a nuclear security officer who lost his ability to maintain unescorted access at a nuclear facility pursuant to the NRC regulations.  As a result, the employer concluded the plaintiff was unqualified for his position as a nuclear security officer.  In affirming summary judgment in favor of the employer, the court also affirmed the trial court's denial of the plaintiff's FMLA interference claim holding the employer was not required to reinstate the plaintiff to his position because he was unable to perform the essential functions of his job as a nuclear security officer.

Because Plaintiff was unable to perform the essential function of working more than 10 hours per day under an ADA analysis, Plaintiff's FMLA interference claim fails as matter of law.  Entergy was not required to return Plaintiff to his position under the FMLA.

## C.   Plaintiff's ERA Retaliation Claim Must Be Dismissed.

For the following additional reasons, Plaintiff's ERA claim concerning the separation of his employment also should be dismissed as a matter of law.

### 1.   Plaintiff's ERA retaliation claim is time-barred.

Plaintiff filed a complaint with the U.S. Department of Labor (DOL), Occupational Safety and Health Administration (OSHA), dated October 4, 2016.  Plaintiff claims that Entergy violated Section 211 of the ERA by subjecting him to various instances of "adverse action" during his employment with Entergy.  Pursuant to the ERA's 180-day

- 33 -

limitations period, any actions that occurred more than 180 days prior to that date – April 7, 2016 – are time-barred.  On April 1, 2016, Entergy provided to Plaintiff, through his counsel, final, definite and unequivocal notice that his employment would end.  In particular, Entergy informed Plaintiff that it had asked Dr. Kwa whether his 10 hour per-day limitation was specific to Plaintiff's Receipt Inspector position.  Entergy explained that Dr. Kwa's limitation applied to _all_ work, and hence he was not qualified for any IPEC position.  Entergy once again made clear that "Entergy has no option but to terminate Mr. Kosack's employment," but once again offered Plaintiff the opportunity to go onto STD with his termination occurring at the conclusion of the STD period.  (Kozak Aff. Ex. YYY.)

The law is well-established that in whistleblower cases under section § 5851(b)(1) ("Section 211") of the ERA, "a plaintiff's cause of action accrues when he receives notice of termination, not when his employment actually ceases ... and the filing limitations period therefore commenced ..." at the time the "decision was made and communicated" to the plaintiff.  Belt v. U.S. Dep't. of Labor, 163 Fed. Appx. 382, 387 (6th Cir. 2006) (citing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)).  The date that an employer communicates its intent to terminate marks the occurrence of a violation.  See Shultz v. Congregation Shearith Israel, 867 F.3d 298, 305 (2d Cir. 2017).  Entergy notified Plaintiff of its intent to terminate his employment on at least two occasions before the end of the ERA's limitations period.  As a result, a timely claim under the ERA relating to the Company's decision to not return Plaintiff to work after it concluded he could not work should have been filed at the latest within 180 days after April 1, 2016 when he was informed of the final decision (_i.e._, by no later than September 28, 2016).  Plaintiff's OSHA complaint dated October 4, 2016, thus was untimely.

**2.**      **Regardless, Plaintiff cannot point to any evidence supporting that alleged protected activity was a contributing factor.**

Plaintiff confirmed that his only "evidence" in support of his claim that Entergy sent him for an IME in February 2016 in retaliation for engaging in protected activity is that Lawrence Coyle ("Mr. Coyle"), then IPEC Site Vice President, was <u>aware</u> Plaintiff made a complaint to the NRC in August 2015.  (Pl. Dep. 628:12-629:10).  Plaintiff provides no causal connection between Mr. Coyle's alleged awareness of an NRC complaint and the decision to send Plaintiff for an IME due to legitimate concerns regarding information provided by Plaintiff's physician about Plaintiff's vertigo causing unsafe working conditions.  Mr. Coyle confirmed, however, that after receiving confirmation that there were no available positions for which Plaintiff was qualified, he made the decision that Plaintiff would not be permitted to return to work at IPEC because of his permanent restriction against working more than 10 hours. (Kozak Aff. Ex. WWW, ¶ 16.)  The Company's legitimate nondiscriminatory decision-making process outlined above also includes no connection to Plaintiff's prior alleged protected ERA activities.  As such, Plaintiff's ERA claim with respect to his termination must be dismissed.

## CONCLUSION

For all the foregoing reasons, Entergy respectfully requests that the Court grant its Motion For Summary Judgment dismissing Plaintiff's Complaint in its entirety.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060

By: _____
Jonathan M. Kozak
Benjamin J. Yeamans

*Attorneys for Defendants*

Dated: March 30, 2018
White *Plains, New York*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

JAY KOSACK,

                              Plaintiff,

        -against-

ENTERGY ENTERPRISES, INC.,                    Civ. No.:  14-CV-9605 (VLB)
ENTERGY NUCLEAR OPERATIONS,
INC., ENTERGY SERVICES, INC.,
ENTERGY NUCLEAR NORTHEAST,

                              Defendants.

-------------------------------------------------X

## CERTIFICATE OF SERVICE

        This is to certify that a true and correct copy of the foregoing Memorandum of

Law in Support of Defendants' Motion for Summary Judgment was served via ECF and UPS,

this 30th day of March, 2018 on Plaintiff Jay Kosack, through his counsel of record, at the

address set forth below:

                    Amy L. Bellantoni, Esq.
                The Bellantoni Law Firm, PLLC
                  2 Overhill Road, Suite 400
                    Scarsdale, NY 10583
                       (914) 367-0090
                    *Attorneys for Plaintiff*


                                        _____
                                        Jonathan M. Kozak